All right, our next case is Deque Systems v. Browserstack. Mr. Deamer. That's correct, Your Honor. Good morning. My name is Tim Deamer. I'm here on behalf of the Plaintiff Appellant, Deque Systems Incorporated. Also with me is my colleague, Courtney Evans. We're brand-new admittees to the Fourth Circuit, and we're privileged to be here presenting oral argument for the first time. I also want to thank the Court for granting our request to present oral argument today. Our brief and appeal raised three substantive issues with subparts. I intend to just focus on issue number one, the sanction that was imposed, as opposed to the damages questions in issues two and three. But, of course, if the Court has questions on those other issues, I'm happy to answer them. That's how I view my role is to address any concerns, any ambiguities that the Court might see in our presentation. On those other issues, I'll just rest on my briefs. Without further ado, so on behalf of the appellant, Deque, my request is a reversal of the summary judgment ruling of the district court, and I see my primary task as persuading the Court that the district court's decision, although not labeled as a terminating sanction or a dismissal under Rule 37B, was, in fact, both of those things. To me, based on a case law and a lower court record, the summary judgment ruling was undoubtedly a dismissal as a sanction, a terminating sanction, to use the vernacular. And I acknowledge that this circuit has not squarely addressed the precise issue we've presented. When does a ruling labeled as a 37C1 ruling shift into a 37B sanction? Other circuits have. And I guess partly to my surprise, the Tenth Circuit decision that we've cited multiple times was decided in 2017. It was an issue of first impression in 2017, so maybe it's not too surprising that this is a novel issue for this circuit. And I think if we look at the effect of a decision as a- I thought we decided that in southern states. 37C1 was the appropriate application. We weren't going to do 37B. In southern states, however, the case was not dismissed, and the party was able to present its case to a jury. And here, the ruling, although labeled as a 37C sanction, prevented DQ from presenting any of its claims to the jury. I believe that's the distinction here. And the manner in which the district court got to that point, I think, is- Well, they said, We declined to consider bad faith as a separate factor in our exclusion analysis. So help us understand. Are you arguing 37B2 should apply here? Correct, Your Honor. That is-we are saying if 37C applies, the sanction was too severe. But I think the wrong test was applied. I think the Wilson test should apply. And this is where we look to the first- Why wasn't that argument waived? You didn't raise it until your 59E motion. Absolutely correct, Your Honor. There's a reason for that. And I'll get to the issue preservation issue first. If we look at the manner in which the-I'm sorry, the district court. Sorry, by my home state, the trial court circuit courts. I keep making that blunder. My mistake. The district court, how the district court granted summary judgment. The district court raised Rule 37, sua sponte, and dove right into the S-States analysis. And this is something getting ready for today. I poured through all the record one more time. Hadn't looked at summary judgment opinion in a while. When I looked at it preparing for today, it jumped out at me. Footnote 3, when the court begins its Rule 37 analysis, the district court's opinion states, this is page 7 of its opinion, and it quotes another case, while the court has not been presented with a Rule 37 motion, it nonetheless has the discretion to apply the Rule 37 standard and conclude that certain evidence should not be considered in determining whether summary judgment is appropriate. That tells me the district court is the one that raised Rule 37 in its summary judgment opinion. And then the district court went right into the S-States analysis. So let's say DQ should have preemptively anticipated this was going to happen. Let's accept that as true. And DQ should have raised this in response to summary judgment. The issue is still preserved, even though it was raised for the first time on reconsideration. And I will note that browsers. Why is that? We have a decision from this court in 1999, a published decision, Highland v. Big River Minerals Corporation, and we cited this in our reply brief. Browser stack also cited in the Zappoli brief, 181F3D579 at page 605. That opinion holds. Ordinarily, an issue has to be raised in advance of reconsideration to be preserved. But there is an exception, and it's a major exception. And this exception was not included in Browser Stack's Zappoli brief. We included it on reply to provide the full quotation from the court to establish this issue was preserved. And this is what the court held at 605. Quote, an issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59E generally is not timely raised. Accordingly, such an issue is not preserved for appellate review unless the district court exercises discretion to excuse the party's lack of timeliness and consider the issue, end quote. So where do they excuse your lack of timeliness? Because the district court's opinion on reconsideration did address our argument. That's a different subject. I mean, there's two requirements, excuse the lateness and then address the argument. So even if we assume they addressed the argument, how is that first prong met? Okay, I read this quote as timeliness is when the issue should have been raised. And this quote is saying ordinarily your argument on appeal should have been raised before reconsideration. It's a timeliness issue. And so it wasn't. And so under this test, the district court has to say you didn't raise it. I'm excusing it for these reasons. I don't see that anywhere in the record. Okay, I didn't see that language in the district court's opinion on reconsideration about we excuse and timeliness. But the district court did decide the issue, did address it, and said, no, I disagree that this was a terminating sanction. I believe this was a two-step process. So the judge did, again, the preservation issues are for two reasons. One, so that we don't come before the circuit court and raise this brand new thing that we should have raised in the district court. But secondly, it's so that this court has a record to review of how the judge, lower court, made its decision. And we definitely have that here because we have an opinion on summary judgment and then an opinion on reconsideration. And what we did not want to do was come to this court immediately with an appeal. Instead, we believe that the district court applied the wrong test. We think this was a terminating sanction, not just merely excluding evidence. And we said, judge, please reconsider your decision. We think you should have looked at this as a 37B issue, even though it wasn't framed as much. And we did get a decision for this court to review on reconsideration. So you're arguing we should treat the exclusion sanction as equivalent to a default judgment? Correct. And your precedent for that is? The precedent for that, okay, and that is an open question in the Fourth Circuit. Our precedent is from other circuits, Tenth, First, and the Eighth. And the Tenth Circuit is the most recent, and I believe it's the most compelling analysis. The Tenth Circuit originally looked at an exclusion of evidence under C1. And as Browser Tech notes, the Tenth Circuit does have a lesser sanction, no, I'm sorry, a bad faith prong to the 37C review that this circuit does not. But then the Tenth Circuit looked at what the effect of the exclusionary ruling was, and they said this is effectively a dismissal or a default, because the exclusionary ruling precluded this party from presenting its claim. And they said we're going to look to 37B-2 for this analysis. Well, wouldn't that also partly be because you didn't have any other evidence? I mean, wouldn't that's your burden to have a panoply of evidence, and so maybe this goes out, but that doesn't stop you from having other evidence. And that's why this is different, that's why this is a terminating sanction. It's not an issue where a party has three different expert witnesses testifying damages, and the district court strikes one or two, but they still have one expert who can come in and testify. Or there's three different claims, and the district court strikes one or two of them, allows one to go forward. This was a ruling that eliminated all claims, or I believe there are four different counts in the amended complaint, different damages theories that were presented, and all of that went by the wayside. To Judge Agee's question, what evidence have you provided of injury outside the now-excluded damages evidence? What other evidence do you have? Okay. Well, first of all, I will also say another unanswered question in the Fourth Circuit is whether damages proofs are even required in a copyright claim. So that's issue number two that we presented. So I think even if we have all McKahan's report, lost profits, avoidant development costs, all excluded, if the court agrees that that should have been excluded, I still think this copyright claim should have been allowed to present to the jury. Are you talking about reputational damage? No. It would be a copyright claim other circuits recognize. It's in issue number two in our brief that damages are not required for a copyright claim because part of the copyright purpose is not just to redress injury and compensate somebody who's injured by a copyright infringement, but also so that it deters future theft. Do you concede now that Briarstick has removed the infringing software and false advertising from its current offered product? Okay. That's a yes or no. And if it's one way, then it makes your claim. Moves doesn't it? Yes or no is tough for lawyers, I'm sorry. I understand that. It's very simple here. No, I believe that those claims still could go forward because the representations from BrowserStack are from an interested witness whose credibility would be at issue that this will not happen again. The advertisement was removed from the website. That did happen, yes. But there's also just... Why didn't they make the claim moot? Because there's... Okay, maybe the false advertising would be moot on that point, but the copyright claim would not be. Copyright claim can vindicate a past infringement, which, again, I don't think the liability issues here are a close question. The evidence is really, really strong about what happened here. We have DQ that spent years and tens of millions of dollars developing this product, and then BrowserStack comes on the scene and does it in less than a year. And during that year, multiple BrowserStack employees, including the individual who supplied the affidavit that Judge Floyd was referring to, their software manager, I believe was his title, they all got licensed for the DQ software. And then, voila, less than a year later, they have a competing software with code that's identical. So liability is really, really strong. And DQ, this is such an important issue to them, that they're not taking the view that we only want to go to trial if we can get $30 million in damages or $2 million in lost profits. They want to go to trial even just to have a ruling from the jury that their copyright was infringed without recovering lost profits. So is that a declaratory judgment claim you're making? Not necessarily, because, again, the case law that we've cited that recognizes damages are not an affirmative element of a copyright claim, those would be jury proceedings, not just a declaratory judgment ruling from the court. So our folks at DQ, they're so incensed by what happened here that they wanted to pursue an appeal knowing that maybe all they get is a If they were that incensed, why did it take them forever and a day to come up with any type of damages? That, Your Honor, is a question I don't know the answer to. I'm not sure exactly how and why what happened, but I do know this court has precedent that a client is not held strictly culpable for its attorney's neglect, and we've cited that case. There may be a malpractice case against the earlier one, but if that were the law, then that would seem to completely eviscerate any of the Rule 37 proceedings. DQ took affirmative action and replaced their first counsel, brought a new counsel, and the first counsel came in. They didn't file their appearance until after the deadlines had expired, but they stepped in and they took immediate actions. They retained an expert. They served supplemental disclosures. They filed motions to compel. They filed motions to extend dates. They were diligent as soon as they got on the scene, but at that point the district court held it was too late. Okay, so at the summary judgment stage, notwithstanding whatever they did or didn't do, what evidence is there that you're suffering an ongoing injury? Okay, so damages would be for past injury. Again, this gets the credibility of the declarant who said, we're not going to do this again, we've removed all the source code, all those things, is someone who is a highly interested individual. All right, but what's your evidence? You don't like theirs, potentially, but the burden is on you. What's your evidence? Okay, so the evidence would be for past damages. I think that evidence is really, really strong. For the future, that would be more of a declaratory. Ruling would be. . . Well, you didn't plead. You never pled declaratory judgment. I looked at many of the complaints again, and it's inartfully phrased. The word declaratory is not there. Those statutes are not there. I'm not going to tell anyone otherwise. The record is the record. But they did ask for a judgment that their copyright had been infringed, those kinds of things. So it's not artfully labeled, but effectively asking for a decision that our copyright was infringed. Whether there's damages or not, that would mean a whole lot to TQI. We're over a little bit. You do have some rebuttal time, so we're now going to hear from Ms. Chang. Good morning, Your Honors. May it please the Court, my name is Carolyn Chang. I'm representing the Browserstack Ethicalese. With me is my colleague, Ryan Martin. I want to address the waiver issue first. Counsel did bring up the Holland v. Big River Minerals case. I do think it's noteworthy there. In that case at footnote 3, they note that the district court did address the waived argument on the merits in the 59E and said that it did so only as an alternative holding to its principal conclusion that the constitutional issues were not properly before the court because they were not timely raised. That is the exact same situation here. The district court, in its order on the 59E motion, did address that it was doing two separate analyses, a sanctions analysis and then a separate independent summary judgment. It was not a terminating sanction. But then it went on to note at JA1357, DQ's position in this regard are simply re-arguments of positions considered and rejected by the court or never previously made and provide no new ground sufficient to justify altering the court's determination. So there was a note by the court that the arguments being advanced by the appellant here on the 59E motion were not timely made and there was no, as the court has, your honors have recognized, no specific finding and excuse for that delay. Do you have any published authority where the judge just didn't exclude certain testimony but excluded all the evidence of the party's damages for a discovery violation? Do you have any published cases for that? I don't, your honor. But what we have here as a situation is the evidence that is being excluded is the evidence that was never disclosed. So the evidence of how they calculated their damages, the evidence of their theory of damages of a lost development cost, things like that. That was never disclosed. So that is the evidence that is being excluded. It wasn't sort of a categorical sanction of I'm not going to let you put on a damages case. Well, did you oppose DQ's argument that copyright infringement claims don't require proof of damages? I do not oppose that for the purpose of this appeal. And I think that that is particularly Do you concede that argument? Well, I concede the fact that had they had evidence to support a claim for an injunction, the case may have perhaps survived some re-judgment. I think that that point actually highlights why the sanctions order was not a terminating sanction. There had to be a separate analysis of what evidence did exist to support the claim going forward. And there was an analysis And when you say the claim going forward, you're talking about a copyright claim? Copyright, false advertisement, the claims that the plaintiff appellant had brought in the case. So is the other claim, looking at this exclusion of evidence, is the other claim then for injunctive relief, for declaratory relief, what do you say was left over at that point before you get to the merits of it? Right. So I think the only thing left over at that point was injunction. They had never made a claim or asserted a claim for declaratory relief, had not asserted a claim for nominal damages. So what we were looking at was whether the case could go forward on whatever evidence of damages was not excluded or on a claim for injunction. So as to the injunction, is your position that they conceded that they were not going forward with an injunction? Or a claim for an injunction? Correct. I think at the summary judgment hearing, they were specifically asked whether they were seeking any other relief other than money damages, and counsel had said it was primarily for money damages. And I think also we did move affirmatively for summary judgment of no injunction. And at that point, in opposition to our motion for summary judgment of no injunction, the plaintiffs who have the burden of proof of seeking an injunction came with no evidence and just said it concludes a remark. It should go to the jury. There's a dispute of fact. If we were to allow DQ's copyright claim to proceed without any evidence of damages, does your claim that you voluntarily ceased selling the copyrighted product, does that move the case? Absolutely. So I think that that's also part of the basis for the summary judgment.  After the sanctions motion, independently in determining summary judgment, that the case could not go forward was because, one, it was the affirmative waiver of any claim for an injunction at the hearing. But secondarily, the court also found that there was just no evidence of any continuing harm. Claims for injunctive relief is supposed to address future. And we, as the defendants, put in evidence that everything that was complained of, without any admission that there was any copying, we just said, let's moot this issue. We will take all that out of our source code. And we don't have it in anymore. We made all past versions, all present versions of our source code, available to the plaintiffs to review if they wanted to see if there was any possibility of ongoing harm. They did not review our source code. They have no evidence of any ongoing complaint of alleged harm. So there was no basis on the merits either to move forward with a claim for an injunction. And other than that, I just wanted to point out the idea of the sanction being either a surprise or an actual terminating sanction is really belied by the record, where our first initial moving papers on summary judgment asked for and cited Rule 37C1 as asking for sanctions. And that was actually fully briefed and argued by the parties, as well as I think there is a sort of practical way of looking at this where in this case we had brought the issue of summary judgment and the sanctions sort of together hand in hand. But that won't always be procedurally the case. And I don't think it makes sense to where this court in southern states has made very clear a 37C1 had found that bad faith is not a requirement like other circuits had done to always require a district court to question down the road what is this going to do with the evidence or how will this play out in perhaps a summary judgment scenario or even at a jury trial based on what evidence is available. That information is not always available to a district court. I'm always curious how that would play out. Then you would have the plaintiff saying, I don't have any evidence. And the defendant would be saying, yes, you do. You've got all this evidence. I don't understand how that would play out ultimately. I agree. I think when we have standards like this, it's supposed to put some consistency for the district court and the exercise of their discretion. And that has to be within the confines of how this issue would be presented in the context of what was produced during discovery and whether those obligations were complied with. Got anything else you want to tell us? Unless you have any questions, I will wrestle on our papers. All right. Thanks very much. Thank you. All right, Mr. Dahmer. Thank you. I'll try to burn through my bullet points here really quick. How do we know this was a terminating sanction? That's a rhetorical question to myself. I think if we look at the record and how this is different than S states, with Judge Agee, your question earlier about does S states control? In S states, after the exclusionary ruling, the party still got to present its case to the jury. That's the difference. Here, there was no ability to present a case to the jury. That's why S states is not the template I would suggest should have been used here because the case was dismissed. And then I'm looking at- And when you say S states, you mean southern states. Correct. Westlaw agrees it's S states, you know, for whatever reason. That's the case I'm referring to. The first sentence of Browser Stack's summary judgment argument was not based on traditional Rule 56 standards. This proves it's a terminating sanction. This is joint appendix, page 665. Argument, the first argument heading, A, the court should enter judgment of no damages. DQ was required at several points to disclose its computation of damages. It was required to do so at its initial disclosures. Citation of Rule 26, it did not reference to damages-related discovery questions. It did not. Those are Rule 26 issues. That shows that the Rule 26 and Rule 37 were used to dismiss this case. Mr. Damon, let me ask a question before you run out of time. When I was reading these materials, what I got from it is that your client kept saying, I can't give you my damages until I get information from the defendant. But then when the expert, and I don't know how to pronounce his name, Kahan, when I read his report, he relies frequently on information he got from your client. So I don't understand that these two positions seem to be inconsistent. You're 100% correct, Judge. I noticed that as well. I'd like to say great minds think alike, but I don't know that I would qualify for that. I agree. Kahan offered two different opinions. One was lost profits, which is based on browser stacks records. The other one was avoided development costs, the costs that DQ incurred. And I agree. That could have been done sooner and should have been done sooner. I'm not going to suggest otherwise. But, again, once the new firm came in, the Bodman firm came in, they got right to it and acted with extreme diligence. And, again, I'm not coming here saying DQ did everything perfectly. Far from it. That is not at all what I'm saying. I'm saying that the punishment did not fit the crime. The sanction that was opposed here was too extreme, too egregious. And I would note that one of the cases we relied on heavily on Rule 37C was a case called Food Buy. And it's an opinion written by, Your Honor, Judge Agee wrote this opinion back in 2021. That case is so similar to our case. But, if anything, the discovery misconduct in that case was worse than what occurred here. Right, but in that case, the opposing counsel, when the district court announced what it proposed, he said, Well, that's fair. He consented to it. I think that takes Food Buy out of any comparison here. Okay. That is a distinction. We'll acknowledge that. But I think there are other lessons from Food Buy beyond the concession from the attorney there. One, I think Food Buy speaks to prejudice and cure. And this court's opinion said the district court fashioned an appropriate cure to any surprise arising from any delay regarding GPI's damages evidence. That case, the cure there was a one-week recess in the middle of trial when the damages were presented for the very first time. Here, the damages were presented after the deadline. I acknowledge that. But well in advance of trial. And there were multiple opportunities for cure. DQ said, We are happy to offer Mick Cahan for a deposition. Browser Steck said no. During one of the hearings, I believe it was November 17th of 2024, the magistrate specifically said to Browser Steck, Why don't we just have seven days? You can depose Mick Cahan. You can depose Preeti Kumar, the CEO of DQ, on the question of damages. They also said no. So, yes, they did not consent like the attorney did in Food Buy. But that also means here they had opportunities to cure their prejudice, and they specifically chose not to. It was strategic not to, and I get it. Everybody has their own strategy. They chose not to cure their prejudice when it was presented as opportunities for them to do so. They also didn't take affirmative steps that are typical, motion to compel, motion for definitive statement, those types of things. They chose to run out the clock at the end of the day. And, again, I will conclude with maybe where great minds were thinking on the question of proportionality. Again, I believe the Estates test and the Wilson test are primarily designed to make sure that the punishment fits the crime. And here we have the ultimate sanction imposed that's supposed to be reserved for the most flagrant and callous, bad-faith abuses of discovery. That didn't happen. It was delayed. It wasn't. There was no documents being shredded. Evidence wasn't hidden. There was no funny business like that. They were not diligent like they should have been originally. New counsel came in and tried as best they possibly could to clear that up. Do you think clean hands is an element of the analysis you're proposing? It does. The published case, I believe it's from 1982, so it's dated but it's still good law here, that a party is not typically held responsible for an attorney's neglect. That happens all the time. It does. There's still that published opinion out there saying it shouldn't. And I would say in DQ's, DQ's hands are clean. They hired a law firm. Law firm wasn't doing what they should have done. When they found out, new law firm came in and acted with extreme dispatch. Motions to compel, motions to extend, expert report, all those things should have been done before, but they were done as soon as that new law firm came in. So I believe DQ's hands are clean. Sounds like you may have another claim to make, just not against these defendants. God forbid. I hate to see that happen, to be honest with you. I've run out of time. I guess if the court has any more questions, I'd really appreciate the opportunity. Thank you very much. Appreciate the argument of counsel. We're going to come down and greet you as soon as the clerk.
judges: G. Steven Agee, William B. Traxler Jr., Henry F. Floyd